UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRYSTAL SPICER,
o/b/o L.T.S., a minor,

                           CASE NO. 15-CV-11037

          Plaintiff,          HONORABLE GEORGE CARAM STEEH

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

_____/

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION (DOC. 21), OVERRULING
PLAINTIFF'S OBJECTIONS (DOC. 22), DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DOC. 18), GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DOC. 20), AND DISMISSING CASE**

Plaintiff Krystal Spicer ("Plaintiff") appeals from the final decision of the

Commissioner of Social Security ("Defendant") denying her application for Supplemental

Security Income ("SSI") on behalf of her minor son, L.T.S. This matter is before the

Court on the parties' cross-motions for summary judgment. (Docs. 18, 20). The Court

referred the motions to Magistrate Judge David Grand for a report and recommendation

("R&R"). The Magistrate Judge recommended that the Court deny Plaintiff's motion for

summary judgment and grant Defendant's motion for summary judgment. (Doc. 21).

Plaintiff has raised three objections to the R&R. (Doc. 22). For the reasons that follow,

the Court will overrule Plaintiff's objections, accept the R&R, deny Plaintiff's motion for

summary judgment, grant Defendant's motion for summary judgment, and dismiss the case.

## I. BACKGROUND

Plaintiff does not specifically object to the Magistrate Judge's recitation of the facts and procedural history in the R&R.  The Court adopts and incorporates that portion of the R&R in full without repeating it here.  This opinion addresses Plaintiff's objections to the R&R.  Additional facts will be set forth in the analysis below, as needed.

## II. STANDARD OF REVIEW

### A.    Objections to a Magistrate Judge's R&R

A party may file timely written objections to a magistrate judge's proposed findings and recommendations.  28 U.S.C. § 636(b)(1).  "A judge of the court shall make a de novo determination of those portions of a report or specified proposed findings or recommendations to which objection is made."  *Id.*  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id.*

### B.    Judicial Review of an ALJ's Decision

A district court's review of the decision of an Administrative Law Judge ("ALJ") is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).  When assessing whether the ALJ's decision is supported by substantial evidence, the reviewing court should consider the administrative record as a whole.  *Futernick v. Richardson*, 484 F.2d 647, 649 (6th Cir.

1973).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is "more than a scintilla but less than a preponderance."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 399 (1938).  "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."  *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009).  The substantial evidence standard is deferential and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference with the courts."  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).   A reviewing court may not resolve conflicts in the evidence or decide questions of credibility.  *Brainard v. Sec'y of HHS*, 889 F.2d 679, 681 (6th Cir. 1989).

## III. ANALYSIS

In all three of her objections, Plaintiff challenges the factual findings of the ALJ and the process through which the ALJ made the findings.  Thus, before addressing the specifics of Plaintiff's objections, the Court will briefly review some of the types of evidence that an ALJ should consider in reaching a disability determination. An ALJ is required to consider "all relevant evidence in [the] case record."  20 C.F.R. § 416.924(a).  The regulations place special emphasis on evidence from "acceptable medical sources," a category which includes physicians, licensed psychologists, optometrists, and podiatrists.  *Id.* § 416.913(a).  Only an acceptable medical source can "provide evidence to establish an impairment," *id.* § 416.913(a), and moreover, certain acceptable medical sources are classified as "treating sources," whose opinions are

-3-

ordinarily entitled to "controlling weight," *id.* § 416.927(c)(2).  But the Social Security

Agency has recognized that

> "[n]on-medical sources" who have had contact with the [claimant] in their
> professional capacity, such as teachers, . . . are also valuable source of
> evidence for assessing impairment severity and functioning.  Often, these
> sources have close contact with the [claimant] and have personal
> knowledge and expertise to make judgments about [the claimant's]
> impairment(s), activities, and level of functioning over a period of time.

SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006); *see also* SSR 09-02p, 2009 WL 396032

(Feb. 18, 2009).  Thus, the ALJ is required to consider this non-medical evidence and

"generally should explain the weight given" to it.  SSR 06-03p; *see also Hill v. Comm'r of

Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (unpublished).[1]  Moreover, the ALJ

should consider evidence from laypersons who are personally acquainted with the

claimant and weigh such evidence based on "the nature and extent of the relationship

[with the claimant], whether the evidence is consistent with other evidence, and any

other factors that tend to support or refute the evidence."  SSR 06-03p.  The claimant's

testimony is also, of course, relevant.

---

[1] There are also certain medical sources, such as licensed clinical social workers
and nurse practitioners, that are not considered "acceptable medical sources."  *See*
SSR 06-03p.  These sources are often important, and the ALJ should consider them
and explain the weight given to them.  *See id.*  This type of source is not present in the
instant case, however.

### A.   Substantial Evidence Supports the ALJ's Finding that L.T.S.'s Impairments Did Not Functionally Equal a Listing.

Plaintiff first objects that "[t]he Magistrate Judge erred in recommending the affirmance of the ALJ's finding that [L.T.S.'s] severe impairments did not functionally equal" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Doc. 22 at 2).  Plaintiff argues that "[s]ubstantial evidence on this record supports only one result – LTS is a severely troubled child and whose [sic] severe impairments make it very difficult for him to get [sic] follow directions and get along at home and school."  (*Id.*).  Plaintiff does not support her objection with any citations to the record or otherwise elaborate on her objection.  (*See id.*).  The Court would therefore be justified in deeming the objection waived.  *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (unpublished) ("[I]ssues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).  Despite Plaintiff's waiver of the objection, the Court will address the arguments that Plaintiff raised on this issue in her summary-judgment motion.[2]  The Court concludes, for the reasons explained below, that substantial evidence supports the ALJ's finding that L.T.S.'s impairments did not functionally equal a listed impairment.

---

[2] However, the Court will not revisit the other issue that Plaintiff raised in her summary-judgment motion: that the "ALJ erred in failing to obtain an opinion from a medical advisor regarding whether LTS's impairments met or medically equaled a listing."  (Doc. 18 at 23).  Plaintiff has not objected to the Magistrate Judge's recommendation on this issue, and the issue is not within the scope of any of Plaintiff's three objections.

A child's impairment or combination of impairments is considered to be "functionally equal" to a listed impairment if the child has a "marked" limitation in two of the six "domains" specified in 20 C.F.R. § 416.926a(b)(1) or an "extreme" limitation in one of the six domains. *See* 20 C.F.R. § 416.926a(d). Generally, a child has a "marked" limitation when the child's impairments "interfere[] seriously with [his or her] ability to independently initiate, sustain, or complete activities" in the domain. *Id.* § 416.926a(e)(2)(i). A child has an "extreme" limitation when the child's impairments "interfere[] *very* seriously with [his or her] ability to independently initiate, sustain, or complete activities" in the domain. *Id.* § 416.926a(e)(3)(I) (emphasis added).

Plaintiff argued in her summary-judgment motion that the ALJ erroneously found that L.T.S. did not have a marked or extreme limitation in any of the domains, and that consequently the ALJ erroneously found that L.T.S.'s impairments did not functionally equal a listed impairment. Plaintiff expressly challenged the ALJ's findings on only four of the six domains. Thus, Plaintiff has waived any challenge to the findings on the other two domains. The Court will only address one of the four remaining domains ("caring for []self") in the present discussion: Plaintiff specifically objects to the Magistrate Judge's analysis of the other three domains ("acquiring and using information," "attending and completing tasks," and "interacting and relating with others") in her other two objections, and the Court will therefore address those three domains in the Court's discussion of the other two objections.

The domain of caring for oneself concerns the child's ability to "maintain a healthy emotional and physical state, including how well [the child] get[s] [his or her] physical and emotional wants and needs met in appropriate ways; how [the child] copes

-6-

with stress and changes in [his or her] environment; and whether [the child] take[s] care of [his or her] own health, possessions, and living area." 20 C.F.R. § 416.926a(k). The criteria for evaluating a child's limitation in this domain vary with the age of the child: A younger child is not expected to be able to take care of as many of his or her needs as an older child. *See id.* § 416.926a(k)(2). Some examples of marked or extreme limitations in the domain of caring for oneself are placing inedible objects in one's mouth, failing to adequately dress or bathe oneself, and a "disturbance in eating or sleeping patterns." *Id.* § 416.926a(k)(3).

The Court finds that substantial evidence supports the ALJ's determination that L.T.S. did not have a marked limitation in caring for himself. At the time of the administrative hearing, L.T.S. was seven years old. (Tr. 43).[3] L.T.S. testified that he was able to complete various chores, dress himself, and get himself ready for bed (a task that included brushing his teeth, washing his face, going to the bathroom, and putting on pajamas). (Tr. 46-47, 52). Moreover, L.T.S. testified that he generally ate and slept well. (Tr. 52-53). L.T.S.'s testimony supports the ALJ's finding that L.T.S. did not have a marked limitation in caring for himself.[4]

---

[3] The Court will use "Tr." to reference pages in the administrative record.

[4] Admittedly, L.T.S.'s testimony consisted almost entirely of yes or no answers to somewhat leading questions. Moreover, L.T.S.'s mother, Plaintiff, testified that L.T.S. did not understand the questions and that he merely answered "yes or no to get [the questioner] to kind of move forward because he doesn't understand." (Tr. 55). Given the form of L.T.S.'s testimony, and given Plaintiff's opinion about the testimony, the ALJ could reasonably have chosen to discount L.T.S.'s testimony. But since the Court is reviewing under a substantial-evidence standard of review, the relevant question at this stage is not whether the ALJ could reasonably have chosen to discount the testimony (or even whether the Court would have discounted the testimony); rather, the relevant question is whether the inferences that the ALJ drew from the testimony are supported

The testimony of Plaintiff, L.T.S.'s mother, contradicts L.T.S.'s testimony in some respects, but on the whole it does not indicate that L.T.S. had marked limitations compared with other children in his age group.  Plaintiff testified that L.T.S. took approximately three hours to go to sleep after being put to bed, but from her testimony it appears that L.T.S. nonetheless was getting approximately ten hours of sleep.  (Tr. 61; *but see* Tr. 32 (ALJ finding that L.T.S. received five to six hours of sleep each night)). Plaintiff testified that L.T.S. was usually "pretty good at" completing chores, but only if Plaintiff gave L.T.S. a single task at a time.  (Tr. 62).  When Plaintiff instructed L.T.S. to complete multiple chores, he would forget the instructions or become overwhelmed. (Tr. 62-63).  Plaintiff also testified that L.T.S. was easily overwhelmed by change; if she, for example, told L.T.S. to take out the garbage, and if the garbage containers were in the wrong location, then it was "very traumatic for him.  Like why aren't they there?  I can't put the garbage away, mom, because I don't know where they are."  (Tr. 64-65). Plaintiff testified that L.T.S. had only recently learned how to tie his shoes and that he would usually fail to retie his shoes when they became untied.  (Tr. 68).  Plaintiff also testified that L.T.S. defaulted to eating with his hands rather than with utensils.  (Tr. 67). Plaintiff explained that if she "give[s] [L.T.S.] his bowl and . . . show[s] him the spoon and the fork . . . [,] he'll take [the utensils] and he knows [how to use them].  But if [Plaintiff] just give[s] him the bowl and he has to go and get his own fork and spoon, he won't do that."  (*Id*.).  The ALJ reasonably discounted Plaintiff's testimony because she

by substantial evidence.  The Court finds that the form of L.T.S.'s testimony and Plaintiff's opinion about the testimony do not so undermine the testimony as to render the ALJ's decision to rely on the testimony unreasonable.  The ALJ's findings based on the testimony are supported by substantial evidence.

was an interested party and because she did not have medical expertise or specialized knowledge about child behavior.  Moreover, while Plaintiff's testimony indicates that L.T.S. had some problems functioning in the domain of caring for himself, her testimony does not indicate that L.T.S.'s impairments *seriously* interfered with L.T.S.'s functioning in this domain, taking into account the fact that L.T.S. was only seven years old at the time of the hearing.

L.T.S.'s teacher at the time of the hearing, Emilee Metcalfe, filled out a Social Security Agency teacher questionnaire.  Her responses to the questions concerning the caring-for-self domain were that L.T.S. generally had "no problem" or a "slight problem" functioning in this domain.  (Tr. 195).  She indicated, however, that L.T.S. had "an obvious problem" (a rating of three on a five-point scale) with "[k]nowing when to ask for help."  (*Id.*).  One of L.T.S.'s first-grade teachers,[5] N. Parsons, filled out a teacher questionnaire in 2012, approximately a year before the hearing.  She indicated that L.T.S. had "obvious" problems and "serious" (a rating of four on the five-point scale) problems functioning in the domain of caring for himself.  (Tr. 168).  She indicated that L.T.S. had a "very serious problem" (a rating of five on the five-point scale) with "[r]esponding appropriately to changes in mood."  (*Id.*).  The other first-grade teacher, Cathleen Brackett, wrote a letter two years before the hearing in which she indicated that L.T.S. had problems following directions and focusing.  (Tr. 241; *see also* Tr. 145).  She stated that when L.T.S. "leave[s] the room to use the bathroom, he seems to forget what his mission is and wanders about aimlessly until reminded."  (Tr. 241).  Although

---

[5] L.T.S. repeated the first grade, and therefore he had two first-grade teachers.

Ms. Brackett's and Ms. Parsons' assessments suggest that L.T.S. had more serious problems with caring for himself than Ms. Metcalfe's assessment indicates, the ALJ could properly have accepted Ms. Metcalfe's assessment while rejecting the other two.[6] Significantly, Ms. Metcalfe's assessment is more recent than Ms. Parsons' or Ms. Brackett's.  Ms. Metcalfe's assessment supports the ALJ's finding that L.T.S. did not have a marked limitation in caring for himself.

State agency psychologist Rose Moten, Ph.D., determined that L.T.S. had "less than marked" limitations in caring for himself.  (Tr. 78).  Other medical professionals saw L.T.S. over the years and noted various cognitive issues and behavioral problems, but they generally did not make findings that directly concerned the caring-for-self domain. As will be discussed in more detail below, the ALJ carefully parsed the various medical professionals' opinions in her analysis and explained the weight given to each. Therefore, Dr. Moten's report, considered in the context of the other medical evidence, supports the ALJ's finding that L.T.S. did not have a marked or extreme limitation in the domain of caring for himself.

In her summary-judgement motion, Plaintiff argued that L.T.S. had marked or extreme limitations in the domain of caring for himself because he had trouble being still (he tended to move around a lot).  (Doc. 18 at 23).  The ALJ credited L.T.S.'s own testimony that he had no problem being still when he had to.  (Tr. 32; *see also* Tr. 44).

---

[6] It is unclear whether the ALJ actually considered Ms. Metcalfe's questionnaire. The ALJ did not mention it in her decision.  But even if the ALJ did not consider Ms. Metcalfe's questionnaire, the ALJ could properly have discounted the other teachers' assessments given that they were relatively stale (one to two years old) and given the other contradictory evidence in the record, summarized in this opinion and the R&R.

The Court admits that L.T.S.'s testimony is somewhat incredible on this point since most of the other evidence in the record suggests that L.T.S. was a somewhat hyperactive child.  But even if the ALJ's credibility determination on this one point is not supported by substantial evidence, it is unclear how L.T.S.'s tendency to move around a lot would have seriously interfered with his ability to care for himself compared with other seven-year-old children.

In sum, there is substantial evidence in the record supporting the ALJ's finding that L.T.S. did not have a marked or extreme limitation in the domain of caring for himself.  As explained below in the discussion concerning the other two objections, substantial evidence also supports the ALJ's findings of no marked limitation with respect to the other domains.  Thus, there is substantial evidence supporting the ALJ's finding that L.T.S.'s impairments did not functionally equal a listed impairment. Plaintiff's first objection is overruled.

**B.    Substantial Evidence Supports the ALJ's Finding That L.T.S. Did Not Have a Marked Limitation in the Domain of Acquiring and Using Information.**

Plaintiff's second objection is that "[t]he Magistrate Judge did not conduct an appropriate substantial evidence review with regard to the domain of acquiring and using information."  (Doc. 22 at 3).  Plaintiff specifically argues that the ALJ violated Social Security Agency regulations by failing to consider all of the evidence in the record and that the Magistrate Judge acted as a "rubber stamp" by improperly discounting the evidence in the record that contradicts the ALJ's finding.  (Doc. 22 at 3-5).  The Court concludes that Plaintiff's argument is without merit.  The ALJ adequately parsed the

evidence in the record and came to a determination that is supported by substantial evidence.  The Magistrate Judge did not err in so finding.

The domain of acquiring and using information concerns the child's ability to "acquire or learn information[] and . . . use the information [he or she has] learned."  20 C.F.R. § 416.926a(g).  The definitions for "marked" and "extreme" limitations are set forth in the section immediately above.  Some examples of limitations in the domain of acquiring and using information are a failure to understand "words about space, size, or time"; inability to rhyme words; "difficulty recalling important things . . . learned in school yesterday"; "difficulty solving mathematics questions"; and "talk[ing] only in short, simple sentences and hav[ing] difficulty explaining what [the child] means."  *Id.* § 416.926a(g)(3).

The Court finds that the ALJ adequately weighed all of the relevant evidence and that substantial evidence supports the ALJ's finding that L.T.S. did not have a marked or extreme limitation in the domain of acquiring and using information.  Plaintiff does not identify any evidence that the ALJ overlooked; rather, Plaintiff disagrees with the weight that the ALJ assigned to each piece of evidence.  The Court sees nothing unreasonable about the way the ALJ weighed the evidence.

In determining that L.T.S. did not have a marked limitation in the domain of acquiring and using information, the ALJ noted that although L.T.S. testified that he did not volunteer in class, L.T.S. testified that he read books and that he enjoyed reading and math.  (Tr. 27; *see also* Tr. 43-50).  The ALJ also noted Plaintiff's testimony that L.T.S. read with her on a daily basis.  (Tr. 27; *see also* Tr. 64).  The ALJ noted that L.T.S. was not in a special education class and that L.T.S instead received extra

"support in math and reading in a small 'pull-out' group five days a week." (Tr. 27; *see also* Tr. 58).[7]

The ALJ also considered a great deal of other evidence in other parts of her decision, although the ALJ did not expressly link this evidence to the issue of L.T.S.'s limitations in acquiring and using information. The evidence that the ALJ referenced substantially supports a finding that L.T.S. did not have a marked limitation in acquiring and using information.

In particular, the ALJ discussed evaluations by various medical providers. It is unnecessary for the Court to recount the ALJ's analysis here, as the Magistrate Judge's summary more than suffices. The Court notes that neither party has identified a treating source and that therefore it was entirely the ALJ's prerogative to determine how much weight to give to each opinion. The Court finds that the ALJ reasonably decided to give more weight to the more recent medical opinions. The more recent opinions suggested that L.T.S. did not have a significant cognitive impairment or learning disability and that L.T.S.'s behavioral problems and hyperactivity were the result of instability at home. (*See* Tr. 23, 73-81, 264-67, 289-94).

Even the older medical evidence is mixed and would not necessarily support a finding of a marked limitation. First, there are notes from 2011 and 2012 by L.T.S.'s

_____

[7] The ALJ considered this fact as evidence that L.T.S.'s impairments were not as serious as Plaintiff alleged. (*See* Tr. 24 ("Importantly, the claimant[] . . . is no longer in special education classes.")). The ALJ's inference is questionable. Plaintiff testified that L.T.S. was not in a special education class because L.T.S.'s school *did not provide* all-day special education. (Tr. 58). Nonetheless, in light of all of the other evidence in the record, the ALJ's determination that L.T.S.'s did not have a marked or extreme limitation in the domain of acquiring and using information was reasonable and supported by substantial evidence.

primary care physician, Dr. Collazo Luis, indicating that L.T.S. was not responding well to the ADD medication he was prescribed, but the notes do not elaborate on the problems. (Tr. 22, 209, 218). Second, there is an evaluation from 2011 by a licensed psychologist, Patrick Ryan, Ph.D., indicating that L.T.S. was within normal limits on two cognitive tests and outside normal limits on a third test. (Tr. 22, 238-40). Dr. Ryan determined that L.T.S. would "require psychotherapeutic intervention and . . . medications going forward." (Tr. 238-40). Third, there is an evaluation from the New Oakland Child-Adolescent and Family Center from 2012 diagnosing L.T.S. with an unspecified learning disorder, ADHD, and adjustment disorder. (Tr. 23, 248-60). The evaluation attributes most of the problems to home stressors and notes that "mom seems to downplay home problems." (Tr. 258). These three sources do not conclusively rebut the opinions of the more recent medical sources.

The ALJ also expressly considered the opinions of the L.T.S.'s two first-grade teachers.[8] In 2011 (two years before the administrative hearing), Ms. Brackett indicated that L.T.S."[l]ack[ed] [an] understanding of basic first grade concepts" and had trouble focusing. (Tr. 241; *see also* Tr. 145). In 2012, Ms. Parsons indicated that L.T.S. had "obvious," "serious," and "very serious" problems in the domain of acquiring and using information. (Tr. 164). The ALJ gave "some weight" to these teachers' opinions due to their first-hand observations of L.T.S. (Tr. 25). The ALJ, however, reasonably chose to

---

[8] It is unclear whether the ALJ considered the opinion of L.T.S.'s second-grade teacher, Ms. Metcalfe. *See supra* note 6. Ms. Metcalfe's questionnaire indicates that L.T.S. had some "slight," "obvious," and "serious" problems in the domain of acquiring and using information. (Tr. 191). The questionnaire is generally consistent with a finding that L.T.S. did not have a marked or extreme limitation in the domain.

credit the testimony of L.T.S. and the medical evidence where that they conflicted with the teachers' opinions.  Although the Court might have chosen to weigh the evidence differently than the ALJ did, the question at this stage is whether there is substantial evidence to support the ALJ's findings.  There certainly is substantial evidence in the record to support the ALJ's finding that L.T.S. did not have a marked or extreme limitation in the domain of acquiring and using information.[9]  Therefore, Plaintiff's objection is overruled.

### C.   Substantial Evidence Supports the ALJ's Finding That L.T.S. Did Not Have a Marked Limitation in the Domain of Attending and Completing Tasks or in the Domain of Interacting and Relating with Others.

Plaintiff's third and final objection is that "[t]he Magistrate Judge . . . failed to conduct an appropriate substantial evidence review with respect to the domains of attending and completing tasks and interacting and relating with others."  (Doc. 22 at 5).  Plaintiff argues that Plaintiff's testimony and L.T.S.'s first-grade teachers' assessments

_____

[9] Plaintiff also accuses the Magistrate Judge of inconsistency in his review of this finding.  Plaintiff contends that the Magistrate Judge

> dismissed [the opinion of first-grade teacher Ms. Parsons] by . . . saying she was only [L.T.S.'s] teacher for a few weeks at the time of her opinion . . . .  The ALJ and Magistrate then went on to say that Plaintiff's second grade teacher observed less problems with plaintiff and cite her questionnaire with approval.  This is despite the fact that Ms. Metcalfe (plaintiff's second-grade teacher) completed her questionnaire even earlier in the school year than Ms. Parsons . . . .

(Doc. 22 at 3).  Plaintiff's argument mischaracterizes the Magistrate Judge's analysis in the R&R.  The Magistrate Judge explained that the ALJ reasonably gave more weight to the opinion of the state agency psychologist, Dr. Moten, than to the opinion of the first-grade teacher, Ms. Parsons.  (Doc. 21 at 17).  The Magistrate Judge then commented that the opinion of the second-grade teacher, Ms. Metcalfe, was consistent with the ALJ's finding (and Dr. Moten's opinion) on the issue of acquiring and using information. The Magistrate Judge did not weigh the opinion of Ms. Parsons against that of Ms. Metcalfe, let alone do so in the inconsistent way that Plaintiff suggests.  Moreover, it is unclear whether the ALJ even considered Ms. Metcalfe's evaluation.  *See supra* note 6.

-15-

demonstrate that L.T.S. has substantial limitations in these two domains.  (*See id.* at 5-7).

### 1.    Attending and Completing Tasks

The domain of attending and completing tasks comprises the child's ability to "focus and maintain [his or her] attention" and "how well [the child] begin[s], carr[ies] through, and finish[es] . . .  activities."  20 C.F.R. § 416.926a(h).  Some examples of limited functioning in this domain are being "easily startled, distracted, or overreactive to sounds, sights, movements, or touch"; being "slow to focus on[] or fail[ing] to complete activities of interest to [the child]"; "repeatedly becom[ing] sidetracked from . . . activities"; "easily [becoming] frustrated and giv[ing] up on tasks"; and "requir[ing] extra supervision to keep . . . engaged in an activity."  *Id.* § 416.926a(h)(3).

The Court finds that the ALJ adequately weighed the evidence in the record and that substantial evidence supports the ALJ's determination that L.T.S. did not have a marked limitation in the domain of attending and completing tasks.  The ALJ specifically considered the questionnaire of first-grade teacher Ms. Parsons, but discounted it because Ms. Parsons "did not provide explanation or evidence to support her observations."  (Tr. 28).  Indeed, Ms. Parsons checked boxes indicating that L.T.S. had "obvious," "serious,"  and "very serious" problems in the domain of attending and completing tasks, but she did not write any comments concerning this domain.  (*See* Tr. 165).  And, as the Magistrate Judge explains, Ms. Parsons had only been L.T.S.'s teacher for about six weeks by the time she filled out the questionnaire.  (Doc. 21 at 18; Tr. 163, 170).  Furthermore, Ms. Parsons filled out her questionnaire in 2012, about a year before the administrative hearing.  (Tr. 170).  Thus, there are a number of reasons

why the ALJ could reasonably have discounted Ms. Parsons' questionnaire.  The 2011 assessment from Ms. Brackett, L.T.S.'s other first-grade teacher, corroborates Ms. Parsons' questionnaire.  (*See* Tr. 241).  But Ms. Brackett's assessment is even staler than Ms. Parsons'.  Thus, the ALJ could reasonably have discounted it.  Finally, the questionnaire of Ms. Metcalfe, L.T.S.'s second-grade teacher, indicates that L.T.S. had either "no problem" or only a "slight problem" with most activities within the attending-and-completing-tasks domain.  (Tr. 192).  L.T.S. did have an "obvious" problem with some activities within that domain, however.  (*Id.*).[10]  Although the two first grade teachers' assessments tend to suggest that L.T.S. had serious problems in the domain of attending and completing tasks, the ALJ reasonably discounted them.

The ALJ also expressly considered Plaintiff's testimony.  Plaintiff testified that L.T.S. is ordinarily able to complete chores so long as he is not given more than one to do at a time.  (*See* Tr. 28, 62-63).  Plaintiff also testified that she is able to read a book with L.T.S. for about twenty minutes before he needs to take a break.  (Tr. 28, 64).  Plaintiff's testimony suggests that L.T.S. has some problems with attending and completing tasks, but the ALJ could reasonably have inferred from the testimony that L.T.S. does not have *serious* limitations in this domain, taking into account the fact that L.T.S. was only seven years old at the time of the hearing.

As noted in the section above, the ALJ reasonably credited the more recent medical evidence and discounted the older evidence.  The more recent medical evidence tends to show that L.T.S.'s concentration and behavioral problems have

---

[10] As mentioned above, it is unclear whether the ALJ considered Ms. Metcalfe's questionnaire.  *See supra* note 6.

improved with medication (Tr. 25, 264, 284; *see also* Tr. 77-78).  Moreover, the more recent medical opinions tend to attribute L.T.S.'s behavioral and hyperactivity problems to stressors from his home life.  (*See, e.g.*, Tr. 267).  Thus, the medical evidence also tends to support the ALJ's finding that L.T.S. did not have a marked or extreme limitation in the domain of attending and completing tasks.

In sum, substantial evidence in the record supports the ALJ's finding that L.T.S. did not have a marked or severe limitation in the domain of attending and completing tasks.  There is little doubt that L.T.S. had some limitations in this area, but substantial evidence supports a finding that they are not "serious."

### 2.      Interacting and Relating with Others

The domain of interacting and relating with others concerns "how well [the child] initiate[s] and sustain[s] emotional connections . . . , develop[s] and use[s] the language of [his or her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others."  20 C.F.R. § 416.926a(i).  Some examples of limitations in this domain are "hav[ing] no close friends" or only having friends who are "older or younger"; "avoid[ing] or withdraw[ing] from people [the child] knows"; being "overly anxious or fearful of meeting new people or trying new experiences"; "hav[ing] difficulty playing games or sports with rules"; and having difficulty communicating.  *Id.* § 416.926a(i)(3).

The Courts finds that the ALJ adequately evaluated the evidence in the record and that substantial evidence supports the ALJ's finding that L.T.S. did not have a marked or extreme limitation in the domain of interacting and relating with others.  The ALJ relied largely on L.T.S.'s testimony in making this determination.  (Tr. 30).  L.T.S.'s

-18-

testimony was sometimes contradictory: At one point he testified that he did not play games or play outside with friends,  (Tr. 49), but at another point he testified that he played with his sister and cousins, (Tr. 52).  L.T.S. also testified that he had a good friend at school named Julian and that he had seventeen other good friends at school. (Tr. 49-50).  Although the Court would have hesitated to rely so much on L.T.S.'s testimony, for reasons explained above, *see supra* note 4, it nevertheless was not unreasonable for the ALJ to rely on L.T.S.'s testimony in determining that L.T.S. did not have a marked limitation in the domain of interacting and relating with others.

The ALJ's finding is also generally consistent with the evidence from L.T.S.'s teachers.  Ms. Parsons indicated in her questionnaire that L.T.S. had "slight" or "obvious" problems with activities within the interacting-and-relating-with-others domain. (Tr. 166).  Ms. Metcalfe indicated that L.T.S. had "no problem" or only a "slight problem" with most of the activities.  (Tr. 193).  Ms. Brackett indicated that L.T.S. lacked confidence, but she did not otherwise comment on L.T.S.'s social skills.  (Tr. 241). Although this evidence indicates that L.T.S. had some problems interacting and relating to others, the ALJ could reasonably have found, considering the teachers' evidence in conjunction with L.T.S.'s testimony, that the problems did not rise to the level of a marked or extreme limitation.

The medical opinion evidence is a bit more problematic, however.  The ALJ gave the most weight to the opinion of the state agency psychologist, Dr. Moten, who found that L.T.S. did not have a marked limitation in the domain of interacting and relating with others.  (Tr. 78).  The other medical providers generally noted that L.T.S. had a reported history of disruptive behavior at school, but they also generally noted that L.T.S.

-19-

behaved well during their evaluations of him.  (*See, e.g.*, Tr. 239, 264).  Licensed

psychologist Nick Boneff, Ph.D., stated in his January 2013 assessment that during his

session with L.T.S., L.T.S.'s "speech was clear and he communicated in full sentences

and made good eye contact."  (Tr. 265).  The most negative assessment is the August

2013 assessment by licensed psychologist Michael Behen, Ph.D.  Dr. Behen's opinion

was that L.T.S. was "experiencing clinically significant levels of behavioral problems,"

although this opinion appears to have been based on Plaintiff's reports rather than Dr.

Behen's first-hand observations.  (*See* Tr. 293).  L.T.S.'s problems included anxiety,

depression, and being withdrawn, but L.T.S. did not exhibit overly aggressive behavior

or rule-breaking behavior.  (Tr. 292).  L.T.S. also had "impaired" communication and

social skills.  (Tr. 292).  Although Dr. Behen's opinion could possibly have supported a

finding that L.T.S. had a marked limitation in the domain of interacting and relating with

others, the ALJ was not unreasonable in choosing to rely on Dr. Moten's assessment.

The ALJ adequately accounted for the fact that Dr. Moten's assessment was not as

recent as Dr. Behen's, explaining that Dr. Moten's assessment was more consistent

with the other evidence in the record.  (*See* Tr. 24).

        In sum, substantial evidence supports the ALJ's finding that L.T.S. did not have a

marked or extreme limitation in the domain of interacting and relating with others.

        In her third objection, as in her second, Plaintiff has failed to identify any

evidence that the ALJ failed to consider.  The ALJ considered all of the evidence in the

record[11] and her findings with respect to the domains of attending and completing

---

        [11] Except, perhaps, for Ms. Metcalfe's questionnaire.  *See supra* note 6.  As
explained in various places above, Ms. Metcalfe's questionnaire generally weighs
*against* Plaintiff.  Thus, any failure to consider it was harmless.

activities and of interacting and relating with others are supported by substantial evidence. Plaintiff's argument is really that the ALJ improperly weighed the evidence. But the Court is limited to reviewing the ALJ's findings under the substantial-evidence standard. And under substantial-evidence review, the Court finds nothing unreasonable about the ALJ's weighing of the evidence. The ALJ's factual findings are supported by substantial evidence. Plaintiff's third objection is overruled.

## IV. CONCLUSION

For the reasons explained above, the Plaintiff's objections are OVERRULED. The Court ADOPTS the Magistrate Judge's R&R in full. Plaintiff's motion for summary judgment is DENIED, Defendant's motion for summary judgment is GRANTED, and the case is DISMISSED.

IT IS SO ORDERED.

Dated: June 8, 2016

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 8, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk